# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# NORTHERN DIVISION

DARRELL A. BRITTINGHAM,         : 
                                                                   :
               Plaintiffs,               :       Civil No. RDB - 02 CV 4055
                                                              :
      v.                                  :
                                                               :
JOSEPH E. McGEENEY, *et al.*,       :
                                                               :
               Defendants.             :

### MEMORANDUM OPINION

Before the Court is the Motion of Defendants, Joseph E. McGeeney and Town Council of Centreville, Inc., to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  The issues have been fully briefed by the parties, and oral argument is not necessary. *See* Local Rule 105.6.  For the reasons set forth below, Defendants' Motion will be GRANTED in part and DENIED in part.

**I.  Background**

Plaintiff Darrell A. Brittingham brings this action for damages allegedly resulting from an arrest and detention which caused injuries to the Plaintiff.  The Defendants are Joseph McGeeney, a police officer in the Centreville Police Department, and Town Council of Centreville, Inc. ("Town Council"), a Maryland municipal corporation.

Plaintiff has alleged the following facts, which for purposes of this Motion only are accepted as

---

[1] Two additional defendants, Charles Greene and John Heddinger, deputy sheriffs in the Queen Anne County Sheriff's Department, were dismissed on April 12, 2003 by Judge Andre M. Davis, before the case was reassigned.

true: At or around 2:38 a.m. on December 19, 1999, Plaintiff was driving down Kidwell Avenue in Centreville when his car was struck by one or more objects thrown by unknown individuals. *Am. Compl.* ¶ 10. He then accelerated and turned onto Brown Street, where he noticed two unoccupied police cars. *Id.* ¶¶ 11-12. Plaintiff stopped his car in order to report the Kidwell Avenue incident to the police. *Id.* ¶ 13. When Plaintiff approached Defendant McGeeney, he noticed that McGeeney had an unknown suspect in handcuffs on the ground. *Id.* ¶ 15. Plaintiff told McGeeney about his car having been struck by objects, but McGeeney told Plaintiff that he was busy. *Id.* ¶ 16. After waiting for a "period of time," Plaintiff decided to leave and started walking towards his car when Defendants McGeeney, Greene, and Heddinger "threw him to the ground, jumped on him, jammed their knees into his back, violently grabbed his arm and jerked his shoulder." *Id.* ¶¶ 17-18. Plaintiff claims that he did not resist until Defendants "ignored [his] cries for them to cease and desist" because he had preexisting injuries. *Id.* ¶ 19. Despite these cries, the Defendants continued to press their knees into his back and twist and pull his arm. *Id.* ¶ 20. As a result of this encounter, plaintiff sustained a dislocated left shoulder that "required surgical reconstruction and a failed fusion at the L5-S1 vertebras [sic] that required decompression and fusion of L4 to the sacrum and surgical installation of instrumentation." *Id.* ¶ 21.

Following the incident, Plaintiff was taken to the Maryland State Police barracks in Centreville, placed in a cell naked, and left until approximately 7:30 a.m., when he was transported to the Centreville Police Department. *Id.* ¶ 23. Officer McGeeney swore out a complaint charging Plaintiff with hindering arrest, resisting arrest, disorderly conduct, driving a vehicle in excess of reasonable and prudent speed, negligent driving, and driving while intoxicated. *Id.* ¶ 24. At the conclusion of trial in the

District Court of Maryland for Queen Anne's County, Plaintiff was found not guilty of hindering arrest, resisting arrest, and driving while intoxicated. *Id.* He was convicted of disorderly conduct and of speeding and negligent driving. *Id.* The latter two offenses involved the same conduct and were merged. *Id.*

Plaintiff has asserted federal claims against Officer McGeeney, both individually and in his official capacity, pursuant to 42 U.S.C. § 1983, for violations of Plaintiff's Fourth and Fourteenth Amendment rights, including the use of excessive force (Count 1) and unlawful arrest (Count 2). Plaintiff has asserted a state law claim against Officer McGeeney, both individually and in his official capacity for, *inter alia*, violations of Plaintiff's rights secured by Articles 2, 19, 24 and 26 of the Maryland Constitution (Count 4). Finally, Plaintiff has asserted common law tort claims against Officer McGeeney, individually and in his official capacity, for assault (Count 6), battery (Count 7), false arrest (Count 8), false imprisonment (Count 9), malicious prosecution (Count 10), and negligence (Count 11). Plaintiff has demanded both compensatory and punitive damages on all claims.

As to Town Council, Plaintiff has asserted a §1983 claim alleging Defendant's failure to instruct, supervise, control and discipline Officer McGeeney (Count 3), a state constitutional claim for injuries allegedly caused by an official policy or custom (Count 5), a common law *respondeat superior* claim (Count 12), and a common law negligent hiring, retention and supervision claim (Count 13). Plaintiff has demanded both compensatory and punitive damages on these claims.

Defendants have moved to dismiss, on various grounds, all Counts of the Amended Complaint for failure to state a claim upon which relief may be granted. For the sake of simplicity, the Court will address the § 1983, state constitutional, and common law claims against each Defendant separately.

3

## II. Standard for Motion to Dismiss

Pursuant to Rule 12(b)(6), dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When ruling on a motion to dismiss under 12(b)(6), a court must accept the allegations contained in the complaint as true. *See DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999). The Court is not, however, "bound by the Plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (reiterating that a Plaintiff's legal conclusions merit no deference in deciding a motion to dismiss). The issue that remains then, is not whether a Plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims made. *Scheuer v. Rhodes*, 416 U.S. 232 (1974).

## III. Analysis

### A. Section 1983 Claims against Officer McGeeney (Counts 1 and 2)

Officer McGeeney contends the doctrine of qualified immunity shields him from liability for the excessive force and unlawful arrest claims in Counts 1 and 2 of the Complaint. *Defs.' Mem.* at 2-3. The Supreme Court has held that government officials, including police officers, are entitled to qualified immunity for discretionary acts performed in connection with their public service, unless they violate "clearly established" constitutional rights of which a reasonable officer would know. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

### 1. Excessive Force

Officer McGeeney argues that the facts alleged in the Amended Complaint "support the assertion that [his] use of force against Plaintiff was entirely reasonable and appropriate to ensure the safety of himself and bystander's [sic] in the area." *Defs.' Mem.* at 5. The Fourth Amendment's "prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). Whether the force applied was reasonable depends upon facts not currently in evidence, including (1) the severity of the crime at issue; (2) whether Brittingham posed an immediate threat to the safety of the arresting officers or the public; (3) whether Brittingham actively resisted arrest or attempted to resist arrest by flight; and (4) the extent of Brittingham's injuries. *Id.* at 527-28 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Officer McGeeney argues that, because Brittingham was convicted of disorderly conduct and speeding and "concedes" in the Amended Complaint that he resisted arrest, the Court should conclude that, as a matter of law, the use of force was objectively reasonable under the circumstances. This argument fails, because Brittingham has alleged facts that, when accepted as true, set forth a cognizable Fourth Amendment claim. Brittingham has alleged that he stopped his car in an effort to obtain police assistance and that he located and approached Officer McGeeney, who was in the process of apprehending a suspect. *Am. Compl.* ¶¶ 13-16. Brittingham has further alleged that Officer McGeeney said that he was busy, that he waited for a period of time, and that, when he went to return to his car, Officers McGeeney, Greene and Heddinger, "without provocation, cause, excuse, or explanation, grabbed [him] from behind and threw him to the ground, jumped on him, jammed their knees into his back, violently grabbed his arm and jerked his shoulder." *Id.* ¶¶ 16-18. Brittingham has

5

alleged that he offered no resistance until the officers ignored his cries for them to cease and desist. *Id.* ¶ 19. Finally, Brittingham has alleged that he sustained severe physical injuries as the result of the officers' actions. *Id.* ¶ 21. These allegations are more than sufficient to frame a cause of action that withstands Defendants' Motion to Dismiss. Accordingly, the Motion will be denied as to Count 1.

### 2.     Unlawful Arrest

Officer McGeeney next argues that the Amended Complaint contains facts that demonstrate probable cause to arrest and detain Brittingham. *Def.'s Mem.* at 4. If probable cause is present, Defendant contends, then Plaintiff cannot establish that the seizure was unreasonable under the Fourth Amendment. *Id.* Officer McGeeney claims that, because Brittingham "concedes" in the Amended Complaint that he was speeding, "a reasonable officer would have cause to believe plaintiff was in the process of committing the offenses of negligent driving and driving while intoxicated." *Defs.' Reply Mem.* at 1. Additionally, Officer McGeeney argues that Brittingham "conceded" that he resisted arrest. *Defs.' Mem.* at 4.

As Defendants correctly note, however, probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest. *Id.* (citing *United States v. Garcia*, 848 F.2d 58 (4th Cir. 1988)). This necessarily requires the consideration of evidence not presently before the Court and cannot be disposed of based solely upon Defendants' interpretation of the facts in the Amended Complaint. Brittingham has sufficiently pleaded a cause of action for a Fourth Amendment violation, because he has alleged that he parked his car in order to seek out the police officers, and that when he found them, they were already occupied with another suspect. *Am. Compl.* ¶¶ 13, 15. Viewing the allegations in the light most favorable to Plaintiff, it would certainly be possible for a trier of

6

fact to infer that Officer McGeeney had not been aware of Brittingham's presence until Brittingham approached the officers to request assistance. In addition, Brittingham has also stated that he "offered no resistance until [after he was attacked and the officers had] ignored [his] cries for them to cease and desist because . . . they were causing him great pain." *Id.* ¶ 19. If the fact finder were to find that the officers had thrown Brittingham on the ground without a reasonable belief of probable cause, violently twisting his arm and shoulder in the process of handcuffing him, such "resistance" after the fact would not justify the arrest. Accordingly, Defendants' Motion to Dismiss will be denied with respect to Brittingham's unlawful arrest claim in Count 2.

### 3. Distinction between Claims Asserted against Officer McGeeney in his Personal and Official Capacities

When a plaintiff names a government official in his individual capacity, the plaintiff seeks "to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). By contrast, when a plaintiff names a government official in his official capacity, the plaintiff seeks to recover compensatory damages from the government body itself. *Id.* at 159; *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Naming the official in his official capacity is the equivalent of naming the government entity itself as the defendant and requires the plaintiff to produce *Monell*-type evidence of an official policy or custom as the cause of the constitutional violation. *Williamson v. Virginia Beach*, 786 F. Supp. 1238, 1249 n.12 (E.D. Va. 1992). Because Brittingham has named Town Council as a defendant in Count 3 of the Amended Complaint, the § 1983 claims against Officer McGeeney in his *official* capacity are duplicative and should be stricken. *See Richardson v. Hampton*, 1996 U.S. Dist. LEXIS 15437, *23-24 (E.D. Va.

1996) (finding it "redundant and duplicative" to sue officer in his individual capacity where plaintiff also sued the municipality).

### B. State Constitutional Claims against Officer McGeeney (Count 4)

The Maryland Local Government Tort Claims Act ("LGTCA") governs qualified immunity for municipal police officers. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-301, *et seq.* (2002). The Court recognizes that there are inconsistencies in the case law interpreting the provisions of the LGTCA governing qualified immunity. *Compare Lee v. Cline*, 149 Md. App. 38, 814 A.2d 86 (2002) (ruling that because the plain language of the LGTCA does not distinguish between constitutional torts and non-constitutional torts, officers, in the absence of malice, have immunity for both), *with Davis v. DiPino*, 354 Md. 18, 51, 729 A.2d 354, 371 (1999) (holding that "neither [a] local government official nor a local government entity has available any governmental immunity in an action based on rights protected by the State Constitution"). The Court of Appeals of Maryland recently granted *certiorari* in *Lee* to resolve the question. *See Lee*, 374 Md. 82, 821 A.2d 370 (Apr. 9, 2003) (granting *certiorari* for the question of whether a police officer has qualified immunity for state constitutional violations or state common law intentional torts). Although the Court of Appeals will be analyzing qualified immunity within the framework of the Maryland Tort Claims Act ("MTCA"), the analysis will probably also apply to the LGTCA, as the two statutes are similar. *See Lee*, 149 Md. App. at 77 ("nothing in the language of section 5-507(b) suggests that constitutional torts have been carved out of the LGTCA," just as "nothing in the language of section 5-522(b) suggests that constitutional torts have been carved out of the MTCA").

This Court need not decide at this time whether municipal police officers have immunity from

suits for constitutional violations, because Brittingham has pleaded sufficient facts from which a jury could infer malice.[2]  Under the LGTCA, conduct accompanied by malice is specifically excepted from an official's statutory immunity.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-507(b)(1) (2002) (stating that an "official of a municipal corporation, while acting in a discretionary capacity, *without malice*, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action") (emphasis added).

A malicious act is one "intentionally performed . . . without legal justification or excuse, but with an evil or rancourous motive influenced by hate, the purpose being to deliberately injure the plaintiff." *Leese v. Baltimore County*, 64 Md. App. 442, 480, 497 A.2d 159 (1985).  The existence of malice "may be inferred from the surrounding circumstances." *Green v. Brooks*, 125 Md. App. 349, 377, 725 A.2d 596 (1999) (citing *Leese*, 64 Md. App. at 480).  However, in order to overcome a motion raising governmental immunity, a conclusory accusation of "malicious" conduct is not enough; the plaintiff "must allege with some clarity and precision those facts which make the act malicious." *Manders v. Brown*, 101 Md. App. 191, 216, 643 A.2d 931 (1994) (quoting *Elliot v. Kupferman*, 58 Md. App. 510, 528, 473 A.2d 960 (1984)).

According to the Amended Complaint, Officer McGeeney assaulted Brittingham without provocation or cause. *Am. Compl.* ¶ 18.  The officers threw Brittingham to the ground, jumped on him, jammed their knees into his back, and violently jerked his shoulder and twisted his arm, even after

---

[2]   If Brittingham is unable to make the requisite showing of malice at the summary judgment phase or at trial, the Court will have to rule on whether or not municipal police officers have immunity from suits for constitutional violations pursuant to the LGTCA.

being advised that Plaintiff had a preexisting condition. *Id.* ¶¶ 18-20. The officers caused a dislocation of Brittingham's shoulder that required surgical relocation and back injuries that required decompression, vertebral fusion, and the installation of instrumentation. *Id.* ¶ 21. The Amended Complaint sets forth sufficient facts that, when accepted as true, could adequately support a jury finding that Officer McGeeney acted with malice. The Motion to Dismiss, therefore, will be denied as to Count 4.

  **C.**  **Common Law Tort Claims against Officer McGeeney (Counts 6 through 11)**

    **1.**  **Intentional Tort Claims (Counts 6-10)**

Brittingham has asserted common law tort claims for assault (Count 6), battery (Count 7), false arrest (Count 8), false imprisonment (Count 9), and malicious prosecution (Count 10). Common law public official immunity is "not available with respect to deliberate acts that form the basis for intentional torts." *Thomas v. Annapolis*, 113 Md. App. 440, 456, 688 A.2d 448 (1997). However, the plain language of the LGTCA provides a statutory immunity for non-malicious, discretionary acts in the scope of employment, and does not distinguish between intentional and non-intentional torts. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-507(b)(1) (2002) (stating that an "official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action"); *but see Lee v. Cline*, 149 Md. App. at 83-83 (ruling there is a qualified immunity under section 5-522(b) of the MTCA, because that statute, like the section 5-507(b) of the LGTCA, does not carve out intentional tort claims). The Maryland Court of Appeals has granted certiorari to decide whether a police officer has qualified immunity for state common law

intentional torts. *Lee v. Cline*, 374 Md. 82, 821 A.2d 370 (Apr. 9, 2003) .

Although the Court will be mindful of the Maryland Court of Appeals' ruling in *Lee v. Cline*, this Court will not dismiss Plaintiff's intentional tort claims for the same reason it did not dismiss the state constitutional claims. *See* Section B, *supra*. Simply put, the Plaintiff has adequately pleaded facts which would support a finding that the Defendant acted with malice.[3]  Therefore, the Motion to Dismiss will be denied as to Counts 6, 7, 8, 9 and 10.

### 2. Negligence Claim (Count 11)

With respect to common law negligence in the state of Maryland, "once it is established that the individual is a public official and the tort was committed while performing a duty which involves the exercise of discretion [as opposed to ministerial conduct], a qualified immunity attaches; namely, in the absence of malice, the individual is free from liability." *DiPino v. Davis*, 354 Md. 18, 48-49, 729 A.2d 354 (Md. 1999) (quoting *James v. Prince George's County*, 288 Md. 315, 323-24, 418 A.2d 1173 (1980)); *see also Williams v. Mayor & Baltimore*, 359 Md. 101, 151 (Md. 2000) (stating that "generally, a police officer has immunity from civil liability for negligence when he is performing a discretionary duty"). In the present case, the Defendant's actions were clearly "discretionary."[4]

---

[3] If Brittingham is unable to make the requisite showing of malice at the summary judgment phase or at trial, the Court will have to make a ruling at that time on whether or not municipal police officers have immunity from suits for intentional torts pursuant to the LGTCA.

[4] A "ministerial" act is one where the public official's duty is "absolute, certain, and imperative, involving merely the execution of a set task." *James v. Prince George's County*, 288 Md. 315, 327, 418 A.2d 1173 (1980) (quoting *Doeg v. Cook*, 126 Cal. 213, 58 P. 707, 708 (1899)). However, when a police officer's powers are "exerted or withheld according to his own judgment as to what is necessary and proper," his actions are "discretionary." *Id.* It is "clear that policemen are 'public officials' . . . and that when they are within the scope of their law enforcement functions, they are clearly acting in a discretionary capacity." *Baltimore Police Dep't v. Cherkes*, 140 Md. App.

Additionally, Plaintiff has not alleged that the Defendant acted with any "malice."  For these reasons, Officer McGeeney enjoys qualified immunity with respect to his alleged commission of negligent acts, and Count 11 must be dismissed.

> **D.     Section 1983 Claim against Town Council (Count 3)**

In *Monell v. New York City Department of Social Services*, 436 U.S. 685 (1977), the Supreme Court held that "Congress did intend municipalities and other local government units to be included among those persons to whom" § 1983 of the Civil Rights Act of 1871 applies.  *Id.* at 690.  Specifically, the Court held that local governments can be liable for damages pursuant to § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is a governmental custom, "even though such a custom has not received formal approval through the body's official decision-making channels."  *Id.* at 690-91.  Justice Brennan further held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id.* at 691.

Subsequently, in *Owen v. City of Independence*, 445 U.S. 622 (1980), Justice Brennan, again writing for the Court, held that a municipality has no immunity from § 1983 liability flowing from its constitutional violations, noting "that the municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983."  *Id.* at 638.  In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Court held that "the inadequacy of police training may serve as the basis for § 1983 liability" if such failure "amounts to deliberate indifference to the rights of persons with whom the police

---

282, 329, 780 A.2d 410 (2001) (*quoting Robinson v. Board of County Comm'rs*, 262 Md. 342, 347, 278 A.2d 71 (1971)).

come into contact." *Id.* at 388.

> The issue . . . is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury. *Id.* at 390.

Thus, to prevail on his *Monell* claim against Town Council in Count 3, Brittingham must demonstrate deficiencies in police training that rise to the level of a policy or custom and which proximately caused the deprivations of Plaintiff's constitutional rights by Officer McGeeney. Plaintiff has alleged the following:

> 34. Acting under color of law and pursuant to official policy or custom, Defendant Town Council of Centreville, Inc., knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiff's rights, failed to instruct, supervise, control and discipline on a continuing basis Defendant McGeeney in his duties to refrain from (1) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges and immunities; (2) unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges and immunities; (3) unlawfully and maliciously assaulting and beating a citizen or otherwise using unreasonable or excessive force before, during and after the making of an arrest, whether the arrest was lawful or unlawful; (4) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of Maryland; and (5) otherwise depriving the Plaintiff of his constitutional and statutory rights, privileges, and immunities.
>
> 35. Defendant Town Council of Centreville, Inc. had knowledge or, had it diligently exercised its duties to instruct, supervise, control, and discipline on a continuing basis,

>should have had knowledge that the wrongs done, as heretofore alleged, were about to be committed. Defendant Town Council of Centreville, Inc. had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference or callous disregard of Plaintiff's rights failed or refused to do so.
>
>36. Defendant Town Council of Centreville, Inc., directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant McGeeney heretofore described.
>
>37. As a direct and proximate cause of the acts of Defendant Town Council of Centreville, Inc., as set forth . . . above, Plaintiff suffered physical injury, loss of income, medical expenses, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fourth and Fourteenth Amendment of the Constitution of the United Sates and protected by 42 U.S.C. § 1983.

*Am. Compl.* ¶¶ 34-37.

The Amended Complaint on its face alleges that Town Council knew of and acquiesced in, approved of, or ratified a series of violations of Plaintiff's constitutional rights by its officer, McGeeney, and that, as a result of that action, Plaintiff was harmed. The Complaint alleges only the barest scintilla of facts from which it could be inferred that Town Council employed a governmental policy of inadequate training or supervision that reflected deliberate indifference to the rights of persons with whom its officers came into contact. Pursuant to the liberal system of "notice pleading," a complaint need only include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "a municipal policy or custom giving rise to § 1983 liability [may] not be inferred from municipal inaction in the face of isolated constitutional deprivations by municipal employees," *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984), the Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), has made clear that there is no heightened pleading standard for § 1983 claims. 507 U.S.

at 164-68.  While Count 3, as drafted, comes perilously close to containing only legal conclusions, it cannot be said that there is no set of facts which would support Plaintiff's claim and entitle him to relief.  Accordingly, the Motion to Dismiss Count 3 will be denied.

Proof of a policy or custom of Town Council will require extensive investigation and discovery into matters unrelated to the specific events of December 19, 1999.  Any evidence obtained through such discovery, while admissible against Town Council, would potentially be highly prejudicial against Defendant McGeeney.  It makes little, if any sense, in the context of this case, for the parties to engage in the expense of pretrial proceedings and the trial of the § 1983 claim against Town Council unless and until Plaintiff has established his claim against Officer McGeeney and it can be seen whether a second trial is necessary.  Plaintiff's § 1983 claim against Town Council is derivative and wholly dependent upon Plaintiff prevailing on his constitutional claims against Officer McGeeney.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (jury's finding that a police officer inflicted no constitutional injury on the plaintiff removed any basis for municipal liability against city and members of police commission); *Tempkin v. Frederick County Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095 (1992) (§ 1983 claim of inadequate training or supervision cannot be established without a finding of a constitutional violation on the part of the person being supervised).

Rule 42(b) of the Federal Rules of Civil Procedure authorizes this Court to bifurcate claims where necessary to promote convenience, expedition or economy.  There is clear precedent in this Court for the bifurcation of § 1983 claims against police officers and their municipal employers.  *See, e.g., Marryshow v. Bladensburg*, 139 F.R.D. 318 (D. Md. 1991); *Dawson v. Prince George's County*, 896 F. Supp. 537 (D. Md. 1995).  In the interest of avoiding possibly unnecessary expenses

in discovery, trial preparation and trial, this Court will order the bifurcation of Plaintiff's § 1983 claim against Town Council and his claims against Officer McGeeney and stay discovery as to the claim against Town Council.

### E. State Constitutional Claim against Town Council (Count 5)

A key distinction between federal constitutional claims against a local government and state constitutional claims is that the local government may be vicariously liable for state constitutional violations committed by its agents and employees within the scope of their employment. *Davis*, 354 Md. at 51-52. Among other things, Count 5 alleges that Town Council knew that its officers were engaging in a pattern of illegal conduct but did nothing to stop the conduct, to make redress to Plaintiff or other injured citizens, or to discipline the officers. *Am. Compl.* ¶¶ 48-50. These allegations, coupled with the constitutional tort claim against Officer McGeeney in Count 4, are sufficient to put Town Council on notice that it may be liable for the actions of the officers, as well as its own inaction.

Town Council argues that qualified immunity shields it from liability. It correctly notes that a local government shares its employees' defenses and immunities. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-303(e) (2002) ("A local government may assert on its own behalf any . . . immunity . . . possessed by its employee for whose tortious act or omission the claim against the local government is premised"). However, as noted above in Section B, *supra*, Officer McGeeney, cannot presently establish, as a matter of law, that he is immune from liability for his alleged state constitutional violations. Because the Amended Complaint sufficiently alleges facts from which a reasonable trier of fact could

infer malice on the part of Officer McGeeney,[5] the Motion to Dismiss must be denied with respect to Count 5.

### F. Common Law Claims against Town Council (Counts 12 and 13)

#### 1. *Respondeat Superior* Liability of Town Council (Count 12)

Local governments "enjoy[] governmental immunity with respect to . . . claims that seek to impose *respondeat superior* liability for an intentional tort." *Gray-Hopkins v. Prince George's County*, 309 F.3d 224, 234 (4th Cir. 2002). Similarly, local governments are immune to *respondeat superior* suits based on the negligent acts of their agents and employees. *See Pullium v. Ceresini*, 221 F. Supp. 2d 600, 608 (D. Md. 2002) (ruling that a municipality is immune from suit for negligence under a theory of *respondeat superior*, because there is no waiver of immunity). Count 12 alleges that Town Council is responsible for all of the acts of Officer McGeeney. *Am. Compl.* ¶ 97. As a matter of law, Town Council cannot be vicariously liable for the alleged intentional torts and negligence of Officer McGeeney. The only acts of Officer McGeeney for which Town Council can be vicariously liable are the state constitutional violations. *See Davis*, 354 Md. at 51-52. Because Count 5 of the Amended Complaint alleges a state constitutional tort claim against Officer McGeeney which is predicated upon a theory of *respondeat superior*, Count 12 is duplicative and shall be dismissed.[6]

---

[5] If, however, Brittingham is unable to make the requisite showing of malice at the summary judgment phase or at trial, *and* the Court rules that there is a qualified immunity available for state constitutional torts, then Count 5 shall be dismissed.

[6] If the Court decides as a matter of law that Officer McGeeney is immune from suit for the alleged state constitutional violations, Town Council will also be immune, because a local government "may assert on its own behalf any . . . immunity . . . possessed by its employee for whose tortious act or omission the claim against the local government is premised." Md. Code Ann., Cts. & Jud. Proc. § 5-303(e) (2002).

### 2. Common Law Negligent Hiring, Retention and Supervision (Count 13)

Although Defendants assert that Plaintiff's Count 13 claim fails to allege breach of duty and causation, this Court need not address the pleading requirements of this negligence claim, because the municipality is immune from suit. This Court has recently ruled that the "hiring, training and retention . . . of police officers is a governmental function, and not proprietary or corporate. As such, governmental immunity protects the [municipality] from liability in tort for simple negligence." *Lanford v. Prince George's County*, 199 F. Supp. 2d 297, 302 (D. Md. 2002); *see also Vincent v. Prince George's County*, 157 F. Supp. 2d 588, 594-95 (D. Md. 2001) (dismissing complaint for negligent hiring, retention, and supervision because County, which is a municipality under the LGTCA, was entitled to governmental immunity). Accordingly, Count 13 must be dismissed.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss as to the common law negligence count against Officer McGeeney (Count 11) and the common law *respondeat superior* and negligent hiring and retention counts against Town Council (Counts 12 and 13). The Court will deny the Motion as to the remaining counts of the Amended Complaint. Finally, the Court will bifurcate the § 1983 claim against Town Council (Count 3) and stay discovery with respect to that claim. It will be so ordered.

Dated: August 25, 2003

/s/
Richard D. Bennett
United States District Judge