**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

#796-69518

|  |  |  |
|---|---|---|
| DARRELL A. BRITTINGHAM | : | |
| v. | : | |
| JOSEPH E. McGEENEY, CHARLES GREENE, JOHN HEDDINGER, and TOWN COUNCIL OF CENTREVILLE, INC. | : | CASE NO.: **AMD 02 CV 4055** |

**DEFENDANTS JOSEPH E. McGEENEY AND TOWN COUNCIL OF
CENTREVILLE, INC.'S MOTION FOR SUMMARY JUDGMENT**

1.     On December 18, 1999, plaintiff left his residence at approximately 6:00 or 7:00 p.m. in order to pick up his uncle and go to Dover Downs Race Track. See a true and correct copy of plaintiff's deposition transcript, attached hereto as **Exhibit "A"**, pages 63 and 64.

2.     Dover Downs is a facility located in Dover, Delaware which maintains slot machines and serves alcoholic beverages.  Id. at 63 - 64.

3.     Plaintiff drove and arrived at Dover Downs with his uncle at approximately 9:00 p.m. and, while there, consumed one to two beers.  Id. at 65 - 66.

4.     Plaintiff left Dover Downs with his uncle at approximately 12:00 to 12:30 a.m. and proceeded to drive to his uncle's residence located in Wye Mills, Maryland, which is approximately one hour away from Dover Downs Race Track.  Id. 63-64.

5.     After dropping off his uncle in Wye Mills, plaintiff then proceeded to drive to his own residence located in Church Hill, Maryland.  On his way home, plaintiff was driving through Centreville, Maryland on Route 213, a route plaintiff preferred to take to his residence specifically because he was less likely to be pulled over by the police.  Id. at 70 - 71.

6.    Plaintiff then made a right-hand turn on Little Kidwell Avenue from Route 213.  Id. at 72.

Plaintiff then drove down Little Kidwell Avenue and encountered group of approximately 25

to 30 African Americans who were gathered about 100 feet from a club.  Id. at 72-73.

7.    Plaintiff's car was then struck in the front right quarter panel by a beer bottle which was

thrown by one of the African Americans gather there.  Id. at 77-80.  Plaintiff then sped up

from 25 mph to 35 mph and made a left-hand turn on to Brown Street from Little Kidwell

Avenue.  Id. at 78-85.  Plaintiff rounded the corner on to Brown Street at approximately 35

mph in search of a police officer.  Id. at 85 - 86.

8.    At that same time, Officer McGeeney was attending to an extremely volatile situation

involving two African Americans who were just about to engage in a violent fight which

would potentially cause grievous bodily injury.  See a true and correct copy of Officer

McGeeney's deposition transcript attached hereto as **Exhibit "B"**, pages 62 - 63.

9.    Furthermore, there was a large crowd of African Americans present observing the potential

melee.  Id. at 106.  Out of the two individuals who were threatening to fight each other,

one individual had a machete and the other a four foot walking stick and both were yelling

back-and-forth at each other threatening to do harm to the other.  Id. at 56 - 60.

10.   Arriving on the scene in his police car, Officer McGeeney observed these two individuals

about to fight.  Id. at 59-60.  Immediately, Officer McGeeney exited his police car, drew his

fire arm, pointed it at the individual carrying the machete and ordered him to drop his

weapon, whereupon the individual secured the machete in the trunk of his car.  Id. at 56 -

60.

11.   Officer McGeeney then placed the individual formerly carrying the machete under arrest,

secured him with handcuffs and sat him on the curb on Brown Street.  Id. at 69-74.  Officer

McGeeney then began trying to calm down the other individual who was still enraged and shouting at the handcuffed individual. <u>Id</u>. at 77-78.

12. Suddenly, Officer McGeeney became aware of plaintiff accelerating from Little Kidwell Avenue left on to Brown Street. According to both the testimony of Officer McGeeney and the plaintiff, plaintiff rounded the corner at a rate of speed 10 to 15 mph faster than the speed limit which was posted at 25 mph. <u>Id</u>. at 80-81. <u>See</u> **Exhibit "A"**, pages 84 and 85.

13. Upon exiting his vehicle, plaintiff was wobbly and unsteady on his feet. <u>See</u> **Exhibit "B"**, page 90; <u>See</u> a true and correct copy of the deposition transcript of Deputy John Hettinger, attached hereto as **Exhibit "C"**, page 25.

14. Plaintiff also left his car in the middle of the street, left his car door open and his car engine turned on. <u>See</u> **Exhibit "A"**, pages 89 - 95. Then plaintiff began to immediately ask the people gathered there where the police officer was, since he had seen the flashing lights of Officer McGeeney's patrol car. <u>Id</u>. at 89 - 91.

15. Plaintiff then approached Officer McGeeney and demanded that he arrest the people who hit his car with the beer bottle, and stated several times "Those fucking niggers are throwing bottles at my car." <u>See</u> **Exhibit "B"**, pages 86 - 88. See **Exhibit "C"**, page 25, 41-42.

16. Plaintiff then stood in extremely close proximity to Officer McGeeney, on the same side as Officer McGeeney's holstered weapon, and continued to demand the arrest of the people who threw the bottles at his car. <u>See</u> **Exhibit "B"** pages 88 - 89.

17. Officer McGeeney then extended his arm to back plaintiff away from his holstered weapon. <u>Id</u>. at 88 - 89. At this point, due to plaintiff's proximity to Officer McGeeney, Officer McGeeney detected the odor of beer on plaintiff's breath. <u>Id</u>. at 101 - 105. Also, plaintiff's eyes were red. <u>Id</u>. at 102 - 103.

18.     After being backed away by Officer McGeeney, plaintiff continued to repeat himself time-and-time again and kept trying to approach Officer McGeeney, who was attempting to monitor the two other suspects until sufficient back up arrived. <u>Id</u>. at 91 - 93. One suspect remained handcuffed and the other was not, simply because Officer McGeeney only had one set of handcuffs. <u>Id</u>. at 73 - 74.

19.      Each time plaintiff approached Officer McGeeney, Officer McGeeney would raise his hand in order to indicate that the plaintiff should come no further. <u>Id</u>. at 89 - 92. At this time, sheriff's deputies, Charles Greene and  John Heddinger, arrived as back up for Officer McGeeney. <u>Id</u>. 108 - 109.

20.     Once both subjects who had initially been threatening each other were secured in the back of the police cars, Officer McGeeney immediately advised both sheriff's deputies that the plaintiff was going to be placed under arrest for disorderly conduct and hindering police. <u>Id</u>. at 109 - 110.

21.     Officer McGeeney, along with sheriff's deputies Greene and Heddinger then approached the plaintiff and advised him that he was under arrest for disorderly conduct and hindering police. <u>Id</u>. at 113 - 114.

22.     As Officer McGeeney then attempted to place handcuffs on the plaintiff, plaintiff flung his arms backwards in resistance. <u>Id</u>. at 114. When Officer McGeeney realized that the plaintiff was attempting to resist the arrest, Officer McGeeney and Deputy Greene took the plaintiff to the ground. <u>Id</u>. at 115 - 116;  See **Exhibit "C"**, page 34.

23.     At this point, plaintiff was laying face down on the ground and was preventing the officers from handcuffing him by laying on top of his arms. See **Exhibit "B"**,  page 117 - 118.

PH078359.1

24.    Plaintiff remained on the ground for approximately a two to three minute time period, and during that time continued to resist arrest by screaming, thrashing and kicking. Id. at 121 -122. See **Exhibit "C"**, page 36.

25.    The officers thereby attempted to take the plaintiff to the police car and plaintiff continued to resist by kicking frantically at the officers, and actually managed to kick both Officer McGeeney and Deputy Greene. See **Exhibit "B"**, page 123 - 125.

26.    Upon being placed in the patrol car, plaintiff continued to kick and thrash about in the back seat to such an extent that the frame of the door nearly came away from the frame of the car. Id. at 125. See **Exhibit "C"**, pages 47-48.

27.    As a result of the plaintiff's wild behavior, the officers thereby reopened the back door of the patrol car and secured his feet with leg restraints. See **Exhibit "B"**, pages 125-126. Deputy Heddinger then transported the plaintiff to the Maryland State Police Barracks, during which time plaintiff continued to kick and thrash about in the back seat. See **Exhibit "C"**, pages 47-48.

28.    Plaintiff was thereby charged with driving under the influence, disorderly conduct, hindering/resisting arrest and three other traffic related offenses. See a true and correct copy of the trial transcript of State v. Darrell A. Brittingham attached hereto as **Exhibit "D"**, page 3.

29.    Federal Rule of Civil Procedure 56 states, in pertinent part, a party is entitled to Summary Judgment where "there is no genuine issue as to any material fact." Berry v. Atlantic Coastal Line R. Co., 273 F.2d 572 (4th Cir. 1960).

30.    An issue is genuine if the fact-finder could reasonably hold in the non-movant's favor with respect to that issue and a fact is material if it influences the outcome under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

31.  According to Supreme Court Precedent, police officers are entitled to a qualified immunity for certain discretionary acts. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A police officer's entitlement to this qualified immunity rests upon the application of a two part test. First, the right allegedly violated must have been "clearly established." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The Supreme Court has determined that a right is clearly established if the right is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id.

32.  Second, the court must decide whether or not the officer's conduct was objectively reasonable in light of the information available during the time of the alleged violation. Id.

33.  In Graham v. Connor, the Supreme Court held that a law enforcement official's alleged use of excessive force is properly analyzed under the Fourth Amendment's "Objective Reasonableness"standard. Connor, 490 U.S. at 387.

34.  Applying the objective reasonableness test to Officer McGeeney's actions, it is without question that he was acting reasonably given plaintiff's ridiculously pugnacious actions and attitude.

35.  Plaintiff admits that Officer McGeeney was in the course of detaining two individuals when plaintiff initially approached, and stated specifically that Officer McGeeney had "somebody detained on the ground." See **Exhibit "A"**, pages 92 and 93.

36.  Plaintiff does not dispute the fact that he resisted arrest. Plaintiff states specifically he was face down on the ground with his hands underneath his body, and that he tried to keep them there in an effort to prevent the officers from properly handcuffing him. See **Exhibit "A"**, page 105. Id. 104 - 105. Plaintiff also admits to kicking and flailing around in the back seat after being placed in to the police car.

37.   Applying plaintiff's admissions to the factors set forth in <u>Graham</u> may only lead to the conclusion that Officer McGeeney acted very reasonably under the circumstances. Plaintiff's obstructing, pugnacious and potentially drunken antics prior to his arrest made it necessary for Officer McGeeney to place the plaintiff on the ground in order to arrest him.

38.   In light of this, it should only be seen that plaintiff's actions, and not Officer McGeeney's, were unreasonable in this instance.

39.   Plaintiff has failed to provide any evidence demonstrating that Officer McGeeney did not maintain probable cause to arrest the plaintiff.   In fact, evidence has been produced demonstrating the opposite.

40.   To establish that a seizure was unreasonable, plaintiff must demonstrate that his arrest was made without probable cause. <u>Dunaway v. New York</u>, 442 U.S. 200 (1979). Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest. <u>United States v. Garcia</u>, 848 F.2d 58 (4th Cir. 1988).

41.   For probable cause to have existed there need only be enough evidence to warrant the belief of a reasonable officer that an offense  has been or is being committed. <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963).

42.   Probable cause requires more than a bare suspicion but requires less evidence necessary to convict. <u>Porterfield v. Lott</u>, 156 F.3d 563, 569 (4th Cir. 1998).

43.   On March 17, 2000 plaintiff was found guilty of disorderly conduct by the Honorable Floyd L. Parks and sentenced to 15 days in jail, suspended, $195.00 fine and $55.00 in costs. Plaintiff was also placed on supervised probation for a one year period as a result of his actions on December 19, 1999. <u>See</u> **Exhibit "D"**, pages 72 - 73.

44.     It is unquestionable that there was probable cause to arrest plaintiff, after the criminal court found him guilty of two (2) of the underlying charges, namely disorderly conduct and driving at a speed greater than reasonable for conditions. See **Exhibit "D"**.

45.     Since the standard for conviction is much higher than the standard for probable cause, it is axiomatic that Officer McGeeney maintained the requisite probable cause to initially arrest the plaintiff.

46.     Furthermore, plaintiff admitted at his March 17, 2000 trial that he had a couple beers on the night question, that is normal for him to wobble when walking, that he maintains difficulty walking straight and that his eyes are bloodshot as a result of his contact lenses. Id. at 49.

47.     All of these admissions also lend credence to the fact that Officer McGeeney maintained probable cause to arrest the plaintiff. Taking in to account the plaintiff's above stated physical condition, behavior, and the manner in which Officer McGeeney observed plaintiff driving his car, it is wholly reasonable for an officer to believe that the subject was operating his motor vehicle under the influence.

48.     Therefore, probable cause existed for the arrest of the plaintiff on December 19, 1999.

49.     The LGTCA grants Officer McGeeney qualified immunity against plaintiff's state constitutional law claims and plaintiff's intentional tort claims.

50.     Pursuant to the LGTCA, state personnel are immune from suit in courts of the state of Maryland and from liability in tort in both their personal and official capacities for tortious acts or omissions that are within the scope of the public duties of the State personnel, and are made without malice or gross negligence. See, Courts and Judicial Proceedings, Section 5-522.

51.    Police officers classified as state personnel have a qualified immunity defense against constitutional tort claims which allege violations of the Maryland Declaration of Rights. <u>Lee v. Cline</u>, 149 Md. App. 38, 814 A.2d 86 (2002).

52.    Further, the actions of police officers within the scope of their law enforcement function are quintessential discretionary acts.  <u>Williams v. Prince George's County</u>, 112 Md. App. 549, 685 A.2d 896 (1996).

53.    Whether plaintiff has proffered sufficient evidence to raise the inference of malice is a question of law.  <u>Lee v. Cline</u>, 149 Md. App. 38, 814 A.2d 86 (2002).

54.    To defeat state officials' immunity under the MTCA, the "malice" or "gross negligence" standard requires a showing of actual malice, conduct motivated by ill will, improper motive, or affirmative intent to injure, or showing that the defendant acted with wanton or reckless disregard for the safety of others.  <u>Freeland v. Childress</u>, 177 F.Supp.2d 422 (2001).

55.    Moreover, the actual malice required to defeat public official immunity is an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.  <u>McCoy v. Hatmaker</u>, 135 Md. App. 693, 763 A.2d 596 (2000).

56.    Officer McGeeney is immune from Plaintiff's state constitutional law claims  pursuant to the doctrine of statutory qualified immunity as Officer McGeeney is classified as state personnel pursuant to the Maryland Code, and was involved in the discretionary activity of apprehending and detaining a suspect at the times relevant to Plaintiff's claim.

57.    The Supreme Court of Maryland has determined that a malicious act is one "Intentionally performed ... without legal justification or excuse, but with an evil or rancorous mode of influence by hate, the purpose being to deliberately injure the plaintiff." <u>Leese v. Baltimore County</u>, 497 A.2d 159 (1985).

58.    Plaintiff has not provided any evidence of malice on the part of Officer McGeeney.  The evidence demonstrates that Officer McGeeney did not know plaintiff prior to the incident, thereby leaving a conspicuous absence of any motive behind plaintiff's arrest.  Furthermore, there is no evidence of any ill will toward plaintiff by Officer McGeeney.

59.    This evidence leaves any inference of malice on the part of Officer McGeeney untenable.  It is clear that all the actions of Officer McGeeney on December 19, 1999 were warranted and reasonable under the circumstances.

60.    Officer McGeeney's actions were also legal and justified under the circumstances, since plaintiff, by his own admission, was resisting arrest during the time of his detention.

**WHEREFORE**, Defendants Joseph McGeeney and Town Council of Centerville, Inc. respectfully request this honorable Court to grant summary judgment in their favor.


**Respectfully Submitted,**


**MARKS, O'NEILL, O'BRIEN
& COURTNEY, P.C.**


BY: **/s/ Michael T. Hamilton**
      **Michael T. Hamilton, Esquire**
      The Bonaparte Bldg.
      8 E. Mulberry Street
      Baltimore, MD 21202-2105
      **(410) 385-8335**

      **Attorney for:** Defendants,
      Joseph E. McGeeney and
      Town Council of Centreville, Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

#796-69518

|  |  |  |
|---|---|---|
| | : | |
| DARRELL A. BRITTINGHAM | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH E. McGEENEY, CHARLES GREENE, | : | CASE NO.: **AMD 02 CV 4055** |
| JOHN HEDDINGER, and TOWN COUNCIL | : | |
| OF CENTREVILLE, INC. | : | |
| | : | |

**DEFENDANTS JOSEPH E. McGEENEY AND TOWN COUNCIL OF
CENTREVILLE, INC.'S MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I.    <u>INTRODUCTION</u>

On December 13, 2002 Plaintiff, Darrell A. Brittingham ("plaintiff") filed a complaint in the United States District Court for the District of Maryland in regards to an alleged incident occurring in the morning of December 19, 1999.  The Court considered preliminary objections made by Defendants, and dismissing a number of counts and bifurcating others.  Defendants, Joseph E. McGeeney (Officer McGeeney) and Town Council of Centreville, Inc. (Centreville), as a result of the foregoing, respectfully move this Court to order an entry of summary judgment in their favor, thereby dismissing the remaining Counts of plaintiff's complaint.

## II.    <u>FACTS</u>

On December 18, 1999, plaintiff left his residence at approximately 6:00 or 7:00 p.m. in order to pick up his uncle and go to Dover Downs Race Track. <u>See</u> a true and correct copy of plaintiff's deposition transcript, attached hereto as **Exhibit "A"**, pages 63 and 64.  Dover Downs is a facility located in Dover, Delaware which maintains slot machines and serves alcoholic beverages.   <u>Id</u>. at 63 - 64.  Plaintiff drove and arrived at Dover Downs with his uncle at

PH078359.1

approximately 9:00 p.m. and, while there, consumed one to two beers.  Id. at 65 - 66.  Plaintiff left

Dover Downs with his uncle at approximately 12:00 to 12:30 a.m. and proceeded to drive to his

uncle's residence located in Wye Mills, Maryland, which is approximately one hour away from Dover

Downs Race Track.  Id. 63-64.  After dropping off his uncle in Wye Mills, plaintiff then proceeded

to drive to his own residence located in Church Hill, Maryland.   On his way home, plaintiff was

driving through Centreville, Maryland on Route 213, a route plaintiff preferred to take to his

residence specifically because he was less likely to be pulled over by the police.  Id. at 70 - 71.

Plaintiff then made a right-hand turn on Little Kidwell Avenue from Route 213.  Id. at 72.  Plaintiff

then drove down Little Kidwell Avenue and encountered group of approximately 25 to 30 African

Americans who were gathered about 100 feet from a club.  Id. at 72-73.  Plaintiff's car was then

struck in the front right quarter panel by a beer bottle which was thrown by one of the African

Americans gather there.  Id. at 77-80.  Plaintiff then sped up from 25 mph to 35 mph and made

a left-hand turn on to Brown Street from Little Kidwell Avenue.  Id. at 78-85.  Plaintiff rounded the

corner on to Brown Street at approximately 35 mph in search of a police officer.  Id. at 85 - 86.

At that same time, Officer McGeeney was attending to an extremely volatile situation

involving two African Americans who were just about to engage in a violent fight which would

potentially cause grievous bodily injury.  See a true and correct copy of Officer McGeeney's

deposition transcript attached hereto as **Exhibit "B"**, pages 62 - 63.  Furthermore, there was a

large crowd of African Americans present observing the potential melee.  Id. at 106.  Out of the two

individuals who were threatening to fight each other, one individual had a machete and the other

a four foot walking stick and both were yelling back-and-forth at each other threatening to do harm

to the other.  Id. at 56 - 60.  Arriving on the scene in his police car, Officer McGeeney observed

these two individuals about to fight.  Id. at 59-60.  Immediately, Officer McGeeney exited his police

car, drew his fire arm, pointed it at the individual carrying the machete and ordered him to drop

his weapon, whereupon the individual secured the machete in the trunk of his car.  Id. at 56 - 60.

Officer McGeeney then placed the individual formerly carrying the machete under arrest, secured

him with handcuffs and sat him on the curb on Brown Street.  Id. at 69-74.  Officer McGeeney then

began trying to calm down the other individual who was still enraged and shouting at the

handcuffed individual.  Id. at 77-78.

Suddenly, Officer McGeeney became aware of plaintiff accelerating from Little Kidwell

Avenue left on to Brown Street.  According to both the testimony of Officer McGeeney and the

plaintiff, plaintiff rounded the corner at a rate of speed 10 to 15 mph faster than the speed limit

which was posted at 25 mph.  Id. at 80-81.  See **Exhibit "A"**, pages 84 and 85.

Upon exiting his vehicle, plaintiff was wobbly and unsteady on his feet.  See **Exhibit "B"**,

page 90;  See a true and correct copy of the deposition transcript of Deputy John Hettinger,

attached hereto as **Exhibit "C"**, page 25.  Plaintiff also left his car in the middle of the street, left

his car door open and his car engine turned on.  See **Exhibit "A"**, pages 89 - 95.  Then plaintiff

began to immediately  ask the people gathered there where the police officer was, since he had

seen the flashing lights of Officer McGeeney's patrol car.  Id. at 89 - 91.

Plaintiff then approached Officer McGeeney and demanded that he arrest the people who

hit his car with the beer bottle, and stated several times "Those fucking niggers are throwing bottles

at my car."  See **Exhibit "B"**, pages 86 - 88.  See **Exhibit "C"**, page 25, 41-42.  Plaintiff then

stood in extremely close proximity to Officer McGeeney, on the same side as Officer McGeeney's

holstered weapon, and continued to demand the arrest of the people who threw the bottles at his

car.  See **Exhibit "B"** pages 88 - 89.  Officer McGeeney then extended his arm to back plaintiff

away from his holstered weapon.  Id. at 88 - 89.  At this point,  due to plaintiff's proximity to Officer

McGeeney, Officer McGeeney detected the odor of beer on plaintiff's breath.  Id. at 101 - 105.  Also,

plaintiff's eyes were red.  Id. at 102 - 103.  After being backed away by Officer McGeeney, plaintiff

continued to repeat himself time-and-time again and kept trying to approach Officer McGeeney, who was attempting to monitor the two other suspects until sufficient back up arrived. Id. at 91 - 93. One suspect remained handcuffed and the other was not, simply because Officer McGeeney only had one set of handcuffs. Id. at 73 - 74. Each time plaintiff approached Officer McGeeney, Officer McGeeney would raise his hand in order to indicate that the plaintiff should come no further. Id. at 89 - 92. At this time, sheriff's deputies, Charles Greene and John Heddinger, arrived as back up for Officer McGeeney. Id. 108 - 109. Once both subjects who had initially been threatening each other were secured in the back of the police cars, Officer McGeeney immediately advised both sheriff's deputies that the plaintiff was going to be placed under arrest for disorderly conduct and hindering police. Id. at 109 - 110. Officer McGeeney, along with sheriff's deputies Greene and Heddinger then approached the plaintiff and advised him that he was under arrest for disorderly conduct and hindering police. Id. at 113 - 114. As Officer McGeeney then attempted to place handcuffs on the plaintiff, plaintiff flung his arms backwards in resistance. Id. at 114. When Officer McGeeney realized that the plaintiff was attempting to resist the arrest, Officer McGeeney and Deputy Greene took the plaintiff to the ground. Id. at 115 - 116; See **Exhibit "C"**, page 34. At this point, plaintiff was laying face down on the ground and was intentionally preventing the officers from handcuffing him by laying on top of his arms. See **Exhibit "B"**, page 117 - 118. Plaintiff remained on the ground for approximately a two to three minute time period, and during that time continued to resist arrest by screaming, thrashing and kicking. Id. at 121 -122; See **Exhibit "C"**, page 36. The officers thereby attempted to take the plaintiff to the police car and plaintiff continued to resist by kicking frantically at the officers, and actually managed to kick both Officer McGeeney and Deputy Greene. See **Exhibit "B"**, page 123 - 125. Upon being placed in the patrol car, plaintiff continued to kick and thrash about in the back seat to such an extent that the frame of the door nearly came away from the frame of the car. Id. at 125. See **Exhibit "C"**, pages 47-

48.  As a result of the plaintiff's wild behavior, the officers thereby reopened the back door of the patrol car and secured his feet with leg restraints.  See **Exhibit "B"**, pages 125-126.  Deputy Heddinger then transported the plaintiff to the Maryland State Police Barracks, during which time plaintiff continued to kick and thrash about in the back seat.  See **Exhibit "C"**, pages 47-48.

Plaintiff was thereby charged with driving under the influence, disorderly conduct, hindering/resisting arrest and three other traffic related offenses.  See a true and correct copy of the trial transcript of State v. Darrell A. Brittingham attached hereto as **Exhibit "D"**, page 3.

It is also important to note that at trial for the above offenses, plaintiff admitted the following upon direct examination:

> Q.    Okay. Now, you heard the Officer testify that he observed you wobbling and unsteady on your feet when you walked from your car.  What do you have to say about that?
> A.    That's normal activity for me.  If anybody observed me walking anytime, I am wobbly.  I can't walk straight.  I have a bad back.  I have a bad knee.  I mean, as far as bloodshot eyes, I wear contacts.  You can look at me right now.  My eyes are bloodshot.
> Q.    So you are saying you are bloodshot... your eyes are bloodshot all of the time?
> A.    Yes.
> Q.    Okay.

Id. at 49.  Also, in Plaintiff's Answers to Defendants' Requests for Admission, plaintiff specifically answered:

> **REQUEST NO. 5:** Prior to the alleged incident occurring on December 19, 1999, I, Darrell A. Brittingham, had a prior physical condition which caused me to wobble when I walk.
>
> **RESPONSE:** Admitted.

See a true and correct copy of Plaintiff's Answers to Defendants' Requests for Admission, attached hereto as **Exhibit "E"**, page 2.

## III.    **STANDARD OF REVIEW**

PH078359.1

Federal Rule of Civil Procedure 56 states, in pertinent part, a party is entitled to Summary Judgment where "there is no genuine issue as to any material fact." Berry v. Atlantic Coastal Line R. Co., 273 F.2d 572 (4th Cir. 1960).  An issue is genuine if the fact-finder could reasonably hold in the non-movant's favor with respect to that issue and a fact is material if it influences the outcome under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In making its determination, the Court must review the facts in the light most favorable to the non-moving party. Id. at 248.  However, the non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Id.  The moving party need only show that the non-moving parties' evidence is insufficient to carry its burden of persuasion at trial to meet the burden of Summary Judgement.  Id.

## IV.    LEGAL ARGUMENT

### A.    Officer McGeeney is entitled to a qualified immunity to plaintiff's Section 1983 claims.

According to Supreme Court Precedent, police officers are entitled to a qualified immunity for certain discretionary acts.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A police officer's entitlement to this qualified immunity rests upon the application of a two part test.  First, the right allegedly violated must have been "clearly established." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The Supreme Court has determined that a right is clearly established if the right is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id.

Second, the Court must decide whether or not the officer's conduct was objectively reasonable in light of the information available during the time of the alleged violation.  Id.

According to the Supreme Court in <u>Graham v. Connor</u>,490 U.S. 386 (1989), this reasonableness standard must account for "the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation." <u>Id</u>. at 396-397.

It is undisputed that Officer McGeeney was at all times relevant to this lawsuit acting in his official capacity as a police officer for the Centreville Police Department.  As an officer, he is in fact classified as a government official, and has been classified as a government official at all times relevant to this lawsuit.  Accordingly, Officer McGeeney's actions and plaintiff's claims must be examined within the framework of a qualified immunity analysis.

### 1. **Excessive force**

In <u>Graham v. Connor</u>, the Supreme Court held that a law enforcement official's alleged use of excessive force is properly analyzed under the Fourth Amendment's "Objective Reasonableness" standard.  <u>Connor</u>, 490 U.S. at 387.  The court further clarified that the proper application of this "Reasonableness Standard " requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  <u>Id</u>. at 396.  <u>Tennessee v. Garner</u>, 471 U.S. 1, 8-9 (1985).  Furthermore, the court explained that the officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id</u>.

Applying the objective reasonableness test to Officer McGeeney's actions, it is without question that he was acting reasonably given plaintiff's ridiculously pugnacious actions and attitude.  Plaintiff admits that Officer McGeeney was in the course of detaining two individuals when plaintiff initially approached, and stated specifically that Officer McGeeney had "somebody detained on the

PH078359.1

ground." <u>See</u> **Exhibit "A"**, pages 92 and 93.  Furthermore, plaintiff admits there was a crowd of people gathered "between 20 to 25 feet" from Officer McGeeney at the time he was effectuating the arrests, and that "a few of [the members of the crowd] were yelling…"  <u>Id</u>. 92 - 96.  Plaintiff also admits to feeling a little bit "intimidated" by the crowd.  <u>Id</u>. at 96.  Notwithstanding, plaintiff chose to stand in extremely close proximity to Officer McGeeney on his weapon side, and continuously bother him during the course of this extremely volatile and dangerous situation.  Judge Parks agreed, and, as a result of his actions, plaintiff was found guilty of disorderly conduct and driving at a speed greater than reasonable for conditions.  <u>See</u> **Exhibit "D"**, page 69.

Lastly and most importantly, plaintiff does not dispute the fact that he resisted arrest.  Plaintiff states specifically he was face down on the ground with his hands underneath his body, and that he tried to keep them there in an effort to prevent the officers from properly handcuffing him.  <u>See</u> **Exhibit "A"**, page 105.  Also, a close reading of the testimony of the plaintiff demonstrates that Officer McGeeney placed his knee into the plaintiff's back only when plaintiff resisted being handcuffed.  <u>Id</u>. 104 - 105.  Plaintiff also admits to kicking and flailing around in the back seat after being placed in to the police car.

Applying plaintiff's admissions to the factors set forth in <u>Graham</u> may only lead to the conclusion that Officer McGeeney acted very reasonably under the circumstances.  Plaintiff's obstructing, pugnacious and potentially drunken antics prior to his arrest made it necessary for Officer McGeeney to place the plaintiff on the ground in order to arrest him.  Furthermore, the fact that Officer McGeeney placed his knee in to plaintiff's back only after plaintiff refused to be handcuffed was only done in an effort to get the plaintiff to comply with Officer McGeeney's demand to submit.  In light of this, it should only be seen that plaintiff's actions, and not Officer McGeeney's, were unreasonable in this instance.

**2.    Unlawful Arrest**

PH078359.1

Plaintiff has failed to provide any evidence demonstrating that Officer McGeeney did not maintain probable cause to arrest the plaintiff. In fact, evidence has been produced demonstrating the opposite.

To establish that a seizure was unreasonable, plaintiff must demonstrate that his arrest was made without probable cause. Dunaway v. New York, 442 U.S. 200 (1979). Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest. United States v. Garcia, 848 F.2d 58 (4th Cir. 1988). For probable cause to have existed there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed. Wong Sun v. United States, 371 U.S. 471 (1963). Probable cause requires more than a bare suspicion but requires less evidence necessary to convict. Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998).

On March 17, 2000 plaintiff was found guilty of disorderly conduct by the Honorable Floyd L. Parks and sentenced to 15 days in jail, suspended, $195.00 fine and $55.00 in costs. Plaintiff was also placed on supervised probation for a one year period as a result of his actions on December 19, 1999. See **Exhibit "D"**, pages 72 - 73.

It is unquestionable that there was probable cause to arrest plaintiff, after the criminal court found him guilty of two (2) of the underlying charges, namely disorderly conduct and driving at a speed greater than reasonable for conditions. See **Exhibit "D"**. Since the standard for conviction is much higher than the standard for probable cause, it is axiomatic that Officer McGeeney maintained the requisite probable cause to initially arrest the plaintiff.

Furthermore, plaintiff admitted at his March 17, 2000 trial that he had a couple beers on the night question, that is normal for him to wobble when walking, that he maintains difficulty walking straight and that his eyes are bloodshot as a result of his contact lenses. Id. at 49. All of these admissions also lend credence to the fact that Officer McGeeney maintained probable cause to

PH078359.1

arrest the plaintiff.  Taking in to account the plaintiff's above physical condition, behavior, and the manner in which Officer McGeeney observed plaintiff driving his car, it is wholly reasonable for an officer to believe that the subject was operating his motor vehicle under the influence.  Therefore, probable cause existed for the arrest of the plaintiff on December 19, 1999.

### 3.    The Maryland Local Government Tort Claims Act (LGTCA)

The LGTCA grants Officer McGeeney qualified immunity against plaintiff's state constitutional law claims and plaintiff's intentional tort claims. Pursuant to the LGTCA, state personnel are immune from suit in courts of the state of Maryland and from liability in tort in both their personal and official capacities for tortious acts or omissions that are within the scope of the public duties of the State personnel, and are made without malice or gross negligence.  See, Courts and Judicial Proceedings, Section 5-522.  Police officers classified as state personnel have a qualified immunity defense against constitutional tort claims which allege violations of the Maryland Declaration of Rights.  Lee v. Cline, 149 Md. App. 38, 814 A.2d 86 (2002).   Further, the actions of police officers within the scope of their law enforcement function are quintessential discretionary acts.  Williams v. Prince George's County, 112 Md. App. 549, 685 A.2d 896 (1996).   The MTCA was intended to provide individual state employees some measure of protection against the daunting prospect of being sued for tortious acts or omissions that were undertaken in the line of duty and without actual malice or gross negligence.  Lee, 149 Md. App. 38.   When properly applied to police officers classified as state personnel, this statutory protection strikes a balance with an individual citizen's right to a remedy when his or her constitutional rights have been violated.  Id

Whether plaintiff has proffered sufficient evidence to raise the inference of malice is a question of law.  Lee v. Cline, 149 Md. App. 38, 814 A.2d 86 (2002).  To defeat state officials' immunity under the MTCA, the "malice" or "gross negligence" standard requires a showing of actual malice, conduct motivated by ill will, improper motive, or affirmative intent to injure, or showing

that the defendant acted with wanton or reckless disregard for the safety of others.  Freeland v. Childress, 177 F.Supp.2d 422 (2001).  Moreover, the actual malice required to defeat public official immunity is an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.  McCoy v. Hatmaker, 135 Md. App. 693, 763 A.2d 596 (2000).  Further, allegations of mere negligence are not sufficient to overcome qualified immunity, Ford v. Baltimore City Sheriff's Office, 149 Md. App. 107, 814 A.2d 127 (2002), and bare allegations are insufficient.  Green v. Brooks, 125 Md. App. 349, 725 A.2d 596(1999).

Officer McGeeney is immune from Plaintiff's state constitutional law claims  pursuant to the doctrine of statutory qualified immunity as Officer McGeeney is classified as state personnel pursuant to the Maryland Code, and was involved in the discretionary activity of apprehending and detaining a suspect at the times relevant to Plaintiff's claim.  The Supreme Court of Maryland has determined that a malicious act is one "Intentionally performed ... without legal justification or excuse, but with an evil or rancorous mode of influence by hate, the purpose being to deliberately injure the plaintiff."  Leese v. Baltimore County, 497 A.2d 159 (1985).

Plaintiff has not provided any evidence of malice on the part of Officer McGeeney.  The evidence demonstrates that Officer McGeeney did not know plaintiff prior to the incident, thereby leaving a conspicuous absence of any motive behind plaintiff's arrest.  Furthermore, there is no evidence of any ill will toward plaintiff by Officer McGeeney.  Plaintiff has admitted that, at the time of the arrest, he was unable to walk straight and had blood shot eyes.  Plaintiff also admitted to drinking a couple of beers at Dover Downs and stood in close proximity to Officer McGeeney, leaving Officer McGeeney able to smell the beer on his breath.  Officer McGeeney also observed plaintiff's reckless driving prior to the incident.

Upon being arrested, plaintiff, upon his own admission, began resisting the officer's attempts to place handcuffs on him.  According to plaintiff's testimony, Officer McGeeney only

began to press his knee in to plaintiff's back when plaintiff refused to submit to the handcuffs. Lastly, plaintiff's injuries were caused solely by plaintiff's inability to control his rage, his flailing about and his resisting arrest.

This evidence leaves any inference of malice on the part of Officer McGeeney untenable. It is clear that all the actions of Officer McGeeney on December 19, 1999 were warranted and reasonable under the circumstances.  Officer McGeeney's actions were also legal and justified under the circumstances, since plaintiff, by his own admission, was resisting arrest during the time of his detention.  There is no inference of hate here, and as such, defendants are entitled to summary judgment in their favor.

## V.     **CONCLUSION**

For the foregoing reasons, Defendants Joseph E. McGeeney and Town Council of Centreville, Inc., respectfully request this court to grant summary judgment in their favor.


**MARKS, O'NEILL, O'BRIEN
& COURTNEY, P.C.**


BY: **/s/ Michael T. Hamilton**
**Michael T. Hamilton, Esquire**
The Bonaparte Bldg.
8 E. Mulberry Street
Baltimore, MD 21202-2105
**(410) 385-8335**

**Attorney for:** Defendants,
Joseph E. McGeeney and
Town Council of Centreville, Inc.


PH078359.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

#796-69518

|                                                              |     |                              |
|--------------------------------------------------------------|-----|------------------------------|
| DARRELL A. BRITTINGHAM                                        | :   |                              |
|                                                              | :   |                              |
| v.                                                           | :   |                              |
|                                                              | :   |                              |
| JOSEPH E. McGEENEY, CHARLES GREENE,                          | :   | CASE NO.: **AMD 02 CV 4055** |
| JOHN HEDDINGER, and TOWN COUNCIL                             | :   |                              |
| OF CENTREVILLE, INC.                                         | :   |                              |
|                                                              | :   |                              |

**CERTIFICATE OF SERVICE**

I, **Michael T. Hamilton, Esquire**, being over the age of Eighteen (18) years, and competent to testify, do hereby certify under the penalties of perjury that I did serve a true and actual copy of Defendants' **Motion for Summary Judgment**, by electronic filing to all parties of record on **April 30, 2004**.

**MARKS, O'NEILL, O'BRIEN
& COURTNEY, P.C.**

BY: **/s/ Michael T. Hamilton**
          **Michael T. Hamilton, Esquire**
          The Bonaparte Bldg.
          8 E. Mulberry Street
          Baltimore, MD 21202-2105
          **(410) 385-8335**

          **Attorney for:** Defendants,
          Joseph E. McGeeney and
          Town Council of Centreville, Inc.

PH078359.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

#796-69518

|  |  |  |
|---|---|---|
| | : | |
| DARRELL A. BRITTINGHAM | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH E. McGEENEY, CHARLES GREENE, | : | CASE NO.: **AMD 02 CV 4055** |
| JOHN HEDDINGER, and TOWN COUNCIL | : | |
| OF CENTREVILLE, INC. | : | |
| | : | |

## VERIFICATION

I, **Michael T. Hamilton, Esquire**, hereby state that I am the attorney for Defendants,

**Joseph E. Greene and Town Council of Centreville, Inc.;**  that I am authorized to make this

Verification on their behalf; that I have read the foregoing **Motion for Summary Judgment**; and,

the averments set forth therein are true and correct to the best of my knowledge, information and

belief relating to unsworn falsification to authorities.

**MARKS, O'NEILL, O'BRIEN**
**& COURTNEY, P.C.**


BY: **/s/ Michael T. Hamilton**
**Michael T. Hamilton, Esquire**
The Bonaparte Bldg.
8 E. Mulberry Street
Baltimore, MD 21202-2105
**(410) 385-8335**

**Attorney for:** Defendants,
Joseph E. McGeeney and
Town Council of Centreville, Inc.

DATE: **April 30, 2004**

PH078359.1